GRAFF et al. v. OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, OF LONDON, ENGLAND.

No. 4606.

District Court, N. D. Illinois, E. D.

Aug. 4, 1944.

Isaac B. Lipson, of Chicago, Ill., for plaintiffs.

Cassels, Potter & Bentley, of Chicago, Ill., for defendant.

SHAW, District Judge.

On November 16, 1917, Henderson D. Graff became insured in The Ocean Accident and Guarantee Corporation, Limited, of London, England, the defendant herein, in the principal sum of $10,000 "against loss or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental means."

Throughout the policy the principal sum is referred to as a fixed indemnity. Under the terms of the policy through continuous payments of premiums and by a rider attached thereto this principal sum or fixed indemnity became increased to $15,000. The policy contained a provision that it might be renewed with the consent of the company from term to term by payment of the annual premium in advance after the expiration of the original year for which it was written, and it was so continued by annual premium payments to a period of time after the death of the insured. Other provisions of the policy will later be noticed.

In March, 1941, within the year covered in advance by the last previous payment of premium, the insured while riding in a taxi cab sustained severe accidental injuries in a collision between that cab and a safety island from which he died in approximately twenty-four hours. Without detailing them it is enough to notice that these injuries consisted of compound fracture of one leg causing the bone to protrude through the flesh, severe cuts and bruises, followed by much bleeding and extreme shock. He was never conscious after the accident. The policy contained a clause providing for double indemnities in which it was agreed that if (among other contingencies) the injury resulting in loss should be sustained by the insured while a passenger in a public conveyance the amounts specified should be doubled.

It appears from the evidence that for a considerable period of time prior to the accident and probably for nearly two years the insured had undergone a gall bladder operation and had suffered from a heart ailment which for a long time confined him to his home in the care of a nurse and required him to exercise extreme caution in his physical activities. There is no doubt from the evidence but that the deceased was in a frail condition because of this heart ailment and that it was of such a character as to impair his health and render his life more or less precarious. This condition had existed long prior to the last premium payment on his accident policy and it was contended by special defense in this case that such a condition would have made him uninsurable had the company known about it and that the policy should be considered void for that reason. This defense was ruled out on motion because the policy contains the provision that it can only be extended from year to year by consent of the company. This gave the company not only the option but the absolute right to refuse to accept any renewal premium at the end of any year or to impose any condition they might wish to impose, reasonable or unreasonable, before renewing the policy by accepting the premium. The company could have required a medical examination at any time or could have required the insured to answer questions as to his physical condition. They chose to accept the premium without question from year to year and voluntarily assumed the risk of insuring Mr. Graff in whatever condition he might then be and had no cause to complain that they insured a man in less than robust health. As a matter of law they took him and insured him as he was, bad heart and all, and are in no position to complain about that matter. The last time the company required any information from the insured was in 1939. No questions were asked thereafter.

In the policy in question section 1 provides fixed indemnities for specific losses. Section 2 provides for additional monthly payments. Section 3 provides for cumulations. Section 4 provides for weekly in-

demnities. Section 5 provides for double indemnities. In section 2 it is provided that if the injuries shall result in death the company will pay, in addition to the indemnity otherwise payable, an amount equal to $100 for each $1000 of the original principal sum. Section 5, above mentioned, provides for doubling the indemnities specified in the preceding sections. In other words, the wording of the policy is such that everything provided for under sections 1, 2, 3 and 4 are to be doubled in case the insured suffers the injury while a passenger in a taxi cab, as in this case.

■ The evidence shows that at the time of the injury Mr. Graff was 69 years old. Except for his heart condition he was apparently in good health. He spent a portion of each day at his place of business generally traveling back and forth in a cab. After the cab in which he was riding was demolished against a safety island he was removed therefrom in a bleeding and unconscious condition. The police officer who took him out of the cab said he was bleeding profusely, the cab was bloody and the man could not give his name or answer any questions. He was immediately taken to a hospital and received treatment by surgeons. He had a crushed thigh bone, a severe gash in his neck and was in a dazed condition. By reason of the injury and loss of blood he suffered severely from shock, and notwithstanding the best efforts of the surgeon the bleeding could not be stopped. The testimony of one of the surgeons was to the effect that he bled to death; the splinters of bone came out with the blood and worked their way through the bandages, and that he died of shock. The doctors who saw him were fully agreed on this subject. The insurance company produced a coroner's physician who conducted a post mortem examination and testified that in his opinion the deceased died from coronary thrombosis. This doctor did not see the deceased alive. Another doctor was produced from whom it was sought to elicit opinions as to cause of death based upon hypothetical questions, but no question asked fully presented the condition of the insured man as shown by the evidence and this witness was not permitted to answer. The case was tried by the court without a jury. The court will state that even had he answered the same as the coroner's physician it would have had no effect, because in the opinion of the court the cause of death was clear and proved beyond question. It has been the contention of the defendant in this case that the death of the deceased was not caused by bodily injuries effected solely through accidental means and that the loss did not result directly, independently and exclusively of all other causes than accidental means within the meaning of the policy.

The court disagrees with this theory of the defendant. There is no reason why anyone should think that this man would have died at the time he did except from the accident. Many cases have been decided by the courts on both sides of this question, but there can be no profit in discussing them, because when analyzed they all arrived at the same result or else showed a failure to distinguish between a cause and a condition.

■ The accidental injuries here inflicted were the cause of the death. The frailty of this man's heart was merely a condition of the insured's body. They insured him as he was with all his frailties and those were the conditions under which the risk was incurred. It may be that a more robust person would have lived through such terrible injuries as this man sustained and yet that was not the test and the reason it was not the test was because the company did not choose to make that condition a test of liability. They did not propose or say that they insured only sound persons. They insured whomsoever they pleased, and for one year at a time, reserving to themselves either with or without reason or on condition or without condition the right to renew their contract by accepting the premium. They renewed their contract and accepted the premium and sustained the loss and they must pay it.

I find as a matter of fact that the death of Henderson D. Graff resulted directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental means within the meaning of and as defined by the policy of insurance here in question.

■ I find as a matter of law that section 5 of the policy in question doubles everything provided for in the first four sections of the policy and by a computation therefrom arrive at the conclusion that the plaintiffs are entitled to recover from the defendant the sum of Thirty-three thousand dollars ($33,000), with interest thereon at the rate of 5% per annum from and after

April 14, 1942, and costs of suit, and judgment will be entered therefor.

██ I find no occasion for imposing attorneys' fees for vexatious delay and hold that they be not allowed.